**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UZAIR ODINAEV,<br><br>Petitioner,<br><br>v.<br><br>JESSICA SAGE,<br><br>Respondent. | CIVIL ACTION NO. 3:26-CV-01892<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Petitioner, Uzair Odinaev ("Odinaev"), a native of Tajikistan and citizen of Russia seeking asylum in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On July 7, 2026, Odinaev filed the instant petition requesting that Respondent Jessica Sage ("Sage") release him from custody at the Federal Correctional Institution Lewisburg ("FCI Lewisburg") in Lewisburg, Pennsylvania or provide him with a bond hearing. (Doc. 1, at 3). On July 16, 2026, Sage filed a response to Odinaev's petition. (Doc. 7). On July 29, 2026 Odinaev filed a traverse. (Doc. 8). For the following reasons, Odinaev's petition (Doc. 1) is **GRANTED**, and Sage is **ORDERED** to release Odinaev from custody.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Odinaev's petition, Sage's response, and the exhibits thereto. (Doc. 1; Doc. 7). Odinaev is a native of Tajikistan and citizen of Russia, who first entered the United States on September 2, 2022, at the San Ysidro Port of Entry. (Doc. 1, at 2; Doc. 7, at 2). Odinaev was subsequently encountered by border patrol officers, who issued Odinaev a notice to appear and paroled Odinaev into the United States on September 8, 2022. (Doc. 7, at 2; Doc. 7-2). Upon entering the United States, Odinaev obtained a commercial drivers license and worked as a commercial driver in Pennsylvania.

(Doc. 1, at 2). On October 20, 2022, Odinaev filed an application for asylum and withholding of removal. (Doc. 7, at 3).

On August 15, 2023, United States Citizenship and Immigration Services served Odinaev with a notice to appear charging him as inadmissible. (Doc. 7, at 3). On January 14, 2026, Philadelphia Immigration and Customs Enforcement ("ICE") and Removal Operations ("ERO") arrested Odinaev during a check in appointment pursuant to a I-200 warrant for arrest of alien. (Doc. 1, at 2; Doc. 7, at 3). On March 11, 2026, an immigration judge denied Odinaev's applications for relief and ordered Odinaev removable to Russia or, in the alternative, to Tajikistan. (Doc. 1, at 2; Doc. 7, at 3). On or about April 13, 2026, Odinaev appealed his order of removal to the Board of Immigration Appeals ("BIA"). (Doc. 1, at 2; Doc. 7, at 4). Since his January 14, 2026 arrest, Odinaev has been in ICE custody for over six months. (Doc. 7, at 3). Odinaev is currently detained at FCI Lewisburg. (Doc. 1, at 2); Doc. 7, at 3).

## II. LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with

regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

## III. JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). In *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the

claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Baptiste*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over Odinaev's habeas petition because the legal questions of whether § 1225(b) or § 1226(a) applies to Odinaev and whether Odinaev

is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

## IV. DISCUSSION

Odinaev contends that his prolonged detention without opportunity for an individualized bond determination violates the INA and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 2-3). Sage counters that Odinaev is properly detained under 8 U.S.C. § 1225(b) and is not eligible for release under 8 U.S.C. § 1226(a). (Doc. 7, at 5). The Court will first address whether Sage properly detained Odinaev under § 1225(b). The Court will then address whether Odinaev's detention violates the Due Process Clause of the Fifth Amendment.

### A. SAGE IMPROPERLY DETAINED ODINAEV UNDER 8 U.S.C. 1225(B).

Sage improperly detained Odinaev under 8 U.S.C. § 1225(b), when Sage should have detained Odinaev under 8 U.S.C. § 1226(a). Odinaev avers that he has been deprived of his liberty without adequate due process, warranting immediate release or a bond hearing. (Doc. 1, at 2-3). Sage counters that Odinaev is properly detained under § 1225(b)(1), which mandates the detention of noncitizens who are present in the United States without lawful admission. (Doc. 7, at 5). Sage avers that Odinaev's parole was revoked with written notice when ICE served Odinaev with a notice to appear and that when ICE arrested Odinaev and placed him in removal proceedings, he was properly returned to mandatory detention under 8 U.S.C. § 1225(b)(1). (Doc. 7, at 10-11).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were

subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Baptiste*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Baptiste*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry, they are considered an "arriving alien" and are generally subject to expedited removal, unless they indicate an intention to apply for asylum. If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens are subject to detention while an immigration judge considers their asylum application; however, the Department of Homeland Security ("DHS") may grant such noncitizens parole into the United States for humanitarian purposes. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5).

Pursuant to 8 C.F.R. § 212.5(e), humanitarian parole issued under 8 U.S.C. § 1182(d)(5) terminates without written notice at the time it expires, upon the noncitizen's departure from the United States, with written notice "upon accomplishment of the purpose for which parole was authorized," or with written notice when, in the opinion of DHS officials, neither humanitarian reasons nor public benefit warrants the continued presence of the noncitizen in the United States. Pursuant to 8 C.F.R. § 212.5(e)(2)(i), a charging document served upon a noncitizen "will constitute written notice of termination of parole, unless otherwise specified." For immigration matters, charging documents are written instruments which initiate proceedings before an immigration judge. 8 C.F.R. § 1003.13. Notices to Appear are considered charging documents under the 8 C.F.R. § 1003.13. *Escobar v. Benzel*, No. 26-CV-06456, 2026 WL 2124039, at *1 (D.N.J. July 23, 2026).

When humanitarian parole under 8 U.S.C. § 1182(d)(5) terminates, the noncitizen "shall be restored to the status the he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Even if a noncitizen's parole terminates, "if the exclusion, deportation, or removal order cannot be executed within a reasonable time, the noncitizen shall again be released on parole . . ." 8 C.F.R. § 212.5(e)(2)(i). Courts in the Third Circuit circuit have found the government must follow the regulatory requirements of § 212.5(e) when terminating a noncitizen's parole and may not simply declare that parole was terminated to justify a detention after the fact. *See F.M.S. v. Sage*, No. 1:25-CV-02061, 2026 WL 1113769, at *4 (M.D. Pa. Apr. 24, 2026) (finding that revocation of parole is invalid where the government fails to present evidence that it complied with the requirements of 8 C.F.R. § 212.5(e)); *see Nosirov v. Rife*, No. 2:26-CV-1534, 2026 WL 916602, at *3 (E.D. Pa. Apr. 1, 2026) (stating "parole is a legal status with legal consequences, and the [g]overnment may not erase or ignore that status

when it becomes inconvenient to its detention theory"); *see also Baptiste v. Hoover*, No. 3:26-CV-00890, 2026 WL 1300541, at *5 (M.D. Pa. May 12, 2026) (stating "as the government did not terminate [the petitioner's] humanitarian parole in accordance with the written notice requirements of 8 C.F.R. § 212.5(e), [the petitioner] cannot be restored to custody under § 1225(b)(1)").

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so

the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[1] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained

[1] The Court acknowledges that the Fifth Circuit and Eighth Circuit issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited August 8, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Baptiste*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before

ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(1) or § 1225(b)(2)(A), applies to Odinaev's detention. While Odinaev was paroled into the United States, on January 14, 2026, Odinaev was not arrested and detained pursuant to § 1225(b)(1). On January 14, 2026, Odinaev was arrested and detained pursuant to an I-200 warrant for arrest of an alien in accordance with the provisions of § 1226(a). (Doc. 7-6); *see* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); *see A-J-R v. Rokosky*, No. 25-17279, 2026 WL 25056, at *5 (D.N.J. Jan 5, 2026) (finding petitioner re-detained after release on humanitarian parole could only be properly detained under § 1226(a) because he was not re-detained under parole revocation procedures); *see also Gomes v. Hyde*, 804 F. Supp. 3d 265, 276-77 (D. Mass. 2025) (finding detention under § 1226(a) was applicable to petitioner who was arrested on a warrant, not because humanitarian parole under § 1182(d)(5)(a) automatically terminated). The warrant for Odinaev's arrest provides that the probable cause determination that Odinaev was removable was the pendency of ongoing removal proceedings against Odinaev, not a charge document revoking parole and initiating removal proceedings. (Doc. 7-6, at 1). In fact, Odinaev was first issued a notice to appear at the time he was paroled into the United States on September 8, 2022. (Doc. 7, at 2). It is nonsensical that DHS sought to revoke Odinaev's

parole, through the issuance notice to appear, at the same time it released Odinaev into the country on parole. While Odinaev's parole may have been revoked via the second notice to appear DHS issued Odinaev, that notice to appear was issued on August 15, 2023, three years before DHS issued an I-200 warrant, arrested, and detained Odinaev. (Doc. 7, at 3). Even if Odinaev's parole was revoked, Odinaev's parole should be reinstated because in the three years since ICE issued Odinaev's latest notice to appear, ICE failed to effectuate Odinaev's removal. (Doc. 1, at 3); 8 C.F.R. § 212.5(e)(2)(i) ("if the exclusion, deportation, or removal order cannot be executed within a reasonable time, the noncitizen shall again be released on parole . . ."). Accordingly, Odinaev's arrest and detention comport with the provisions of § 1226(a), not the revocation procedures outlined in 8 C.F.R. § 212.5(e)(2)(i) nor re-detention under 8 U.S.C. § 1225(b)(1). *See Gomes v. Hyde*, 804 F. Supp. 3d 265, 276-77 (D. Mass. 2025) ("Over a year later, he was taken into custody because he was arrested on a warrant issued under Section 1226, not because humanitarian parole under Section 1182(d)(5)(A) automatically terminated."); *see A-J-R v. Rokosky*, No. 25-17279, 2026 WL 25056, at *5 (D.N.J. Jan 5, 2026) ("Because § 1225(b)(1) is not a lawful basis for Petitioner's detention, and Petitioner was not detained under the parole revocation procedures described under 8 C.F.R. § 212.5(e), the Court concludes he can only be properly detained under 8 U.S.C. § 1226(a), as an inadmissible alien arrested pending a decision on whether he is to be removed from the United States."); *see also F.M.S. v. Sage*, No. 1:25-CV-02061, 2026 WL 1113769, at *4 (M.D. Pa. Apr. 24, 2026) (finding that DHS may not declare that parole was terminated to justify a detention after the fact).

Section 1225(b)(2)(A) likewise does not apply to Odinaev's detention because Odinaev is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens

who are applicants for admission *and* are seeking admission to the United States. *See Martinez*, 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also* 807 F. Supp. 3d 397, at 400, 408 (collecting cases). Odinaev is not actively attempting to come into the United States. Odinaev has lived in the United States since September 2022. (Doc. 1, at 11-12). Based on the plain meaning of the phrase "seeking admission," Odinaev sought admission when he entered the United States on or about September 2, 2022. (Doc. 7, at 2); *see Kashranov*, 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Instead, § 1226(a) applies to applicants for admission, like Odinaev, who are not actively seeking admission but who have been residing in the United States for an extended period. *See Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"); *see also Soto*, 807 F. Supp. 3d at 400, 408 (collecting cases). Accordingly, after his January 14, 2026 arrest, Sage improperly detained Odinaev under § 1225(b), when he should have detained Odinaev under § 1226(a).

B. SAGE VIOLATED ODINAEV'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING ODINAEV TO MANDATORY DETENTION.

Sage's continued mandatory detention of Odinaev under § 1225(b) violates Odinaev's procedural due process rights. Odinaev avers that civil detention without opportunity for an individualized custody determination violates the due process protections guaranteed by the Fifth Amendment. (Doc. 1, at 2-3; Doc. 8, at 2-3). Sage counters that Odinaev's temporary detention pending his removal proceedings does not violate due process because Odinaev has ample available process in his current removal proceedings. (Doc. 7, at 14). Sage also avers

that Odinaev is only entitled to the due process afforded to noncitizens under the INA, even if he has lived in the United States for years. (Doc. 7, at 13).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Odinaev's favor because Sage has deprived Odinaev of his physical liberty with improper detention without the possibility of bond under § 1225(b) . (Doc. 1, at 2-3); *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Odinaev's favor because Odinaev remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29,

2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Odinaev's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, Odinaev poses no such risk to the government's interest in detaining him. Sage does not allege that Odinaev poses a flight risk or danger to the community. (*See* Doc. 7). Further, Odinaev has no criminal record and has demonstrated compliance with the immigration process by following the requirements of his asylum proceeding, including attending his ICE check-in appointments. (Doc. 1, at 1-2). As each *Mathews* factor weighs in Odinaev's favor, Sage's mandatory detention of Odinaev under § 1225(b) violates Odinaev's procedural due process rights. Accordingly, Odinaev's petition for writ of habeas corpus is **GRANTED**, and Sage is **ORDERED** to release Odinaev from custody.

## V. CONCLUSION

For the foregoing reasons, Odinaev's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Sage is **ORDERED** to release Odinaev from custody. Odinaev may move to reopen this matter if Sage seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing or if Sage imposes restrictions on Odinaev's release, such as any form of body-worn electronic monitoring. The Clerk of Court is directed to close this matter. An appropriate Order follows.

**BY THE COURT:**

**Dated: August 6, 2026**

*/s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**